FILED

November 16, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 1:18 PM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MURFREESBORO

| | | |
|---|---|---|
| DAVID A. ADAMS, | ) | Docket No.: 2016-05-0423 |
| Employee, | ) | |
| v. | ) | State File No.: 4440-2016 |
| | ) | |
| LIFEPOINT HOSPITALS, INC., | ) | Judge Robert Durham |
| Employer, | ) | |
| | ) | |
| And | ) | |
| | ) | |
| SAFETY NAT'L CAS. CORP. | ) | |
| Insurance Carrier. | ) | |

---

## EXPEDITED HEARING ORDER DENYING MEDICAL BENEFITS

---

This matter came before the undersigned Workers' Compensation Judge on November 9, 2016, upon the Request for Expedited Hearing (REH) filed by the employee, David A. Adams, on August 15, 2016, pursuant to Tennessee Code Annotated section 50-6-239 (2015). Mr. Adams filed the Request to determine if the employer, Lifepoint Hospitals, Inc., is obligated to pay temporary disability benefits for an alleged work-related injury to his low back occurring on January 9, 2016.[1] Following the issuance of a Dispute Certification Notice, Lifepoint moved to amend the DCN to include compensability of the alleged January 9, 2016 injury as an issue as well. Mr. Adams did not contest the motion, which the Court granted by Order entered on October 6, 2016.

The primary issue is whether Mr. Adams sustained an injury to his low back on January 9, 2016, that arose primarily out of and in the course and scope of his employment with Lifepoint. If so, a secondary issue is whether Mr. Adams is entitled to temporary disability benefits due to the injury. The Court holds Mr. Adams did not provide sufficient evidence to establish he is likely to prevail at a hearing on the merits

---

[1] At the hearing, the parties stipulated the only issue was that of compensability and temporary disability benefits. Mr. Adams did not seek any medical benefits.

1

that he sustained a low back injury that arose primarily out of and in the course of his employment on January 9, 2016.[2]

## History of Claim

According to his testimony at the hearing, Mr. Adams worked for eight years as an MRI Technologist at Southern Tennessee Medical Center, owned by Lifepoint Hospitals. On January 9, 2016, a Saturday, he was working alone in the Imaging Department when he transported a patient possibly suffering from a stroke from the emergency room to the MRI Imaging Suite for a brain MRI.

Mr. Adams recounted that, after performing the MRI, he transported the patient by gurney from the MRI Suite to Room 309. While attempting to maneuver the gurney through the room's door, it became stuck on the doorjamb. Mr. Adams testified that in an effort to free the gurney, he lifted up one end to move it sideways away from the door. When he did so, he felt a "pull" in his low back and immediate pain that radiated from his back to his left knee. Mr. Adams completed his shift and went home without telling anyone about his back pain. He testified he was scheduled to be off work for the next four days, and he hoped the pain would subside, but it worsened instead.

On January 13, the day before he was scheduled to return to work, Mr. Adams sought treatment at Hanson Family Medical with Holly Garland, MSN, NP-C. (Ex. 13.) NP Garland noted Mr. Adams presented for medication refills and follow-up for "back/neck pain." Mr. Adams testified Hanson had provided treatment for his chronic back pain for the past five years and he had taken morphine three times a day for the last fifteen years to combat his back pain.

In the January 13 note, NP Garland recounted that Mr. Adams "reports an increase in his low back pain recently with radiation down his left leg. Denies any known injury or abnormal movements to cause increase in pain." (Ex. 13.) On cross-examination, Mr. Adams adamantly maintained he told NP Garland he injured his back at work on January 9 while moving the gurney. He testified he felt the contrary statement was simply a "rubber stamp" form statement contained in all the records, despite the fact that the sentence before documented increased pain and new symptoms. NP Garland prescribed MS Contin to be taken three times a day as well as Percocet to be taken four times a day. Mr. Adams also received an injection of dexamethasone. *Id.*

Mr. Adams testified he returned to work the next day and there was "no question" he told his supervisor, John Howard, that he injured his back on January 9 while moving the gurney. Mr. Howard repudiated this testimony through his affidavit. (Ex. 8.) He recounted that Mr. Adams had previously told him about suffering for years from low

---

[2] Given this holding, the Court need not specifically address the issue of temporary disability benefits.

back pain, and on January 14 told him his back "was sore and painful." Mr. Howard then asked him if he injured it at work, and Mr. Adams told him he was "unsure." *Id.* He further testified Mr. Adams never told him he felt a "pop" in his back while pushing a specific patient. *Id.* At the hearing, Mr. Adams defended his testimony, stating that Mr. Howard was "untruthful," and it was his understanding this was one of the reasons for his subsequent termination by Lifepoint.

In any event, Mr. Howard performed an "unofficial" MRI of Mr. Adams' low back the next day, which Mr. Adams claimed was a common practice in the Imaging Department. After reviewing it, Mr. Adams asked his family practitioner to "order" an MRI so the film could be reviewed by a doctor, which she did. At that point, Mr. Adams notified Human Resources about his alleged work-related injury, and spoke with Mandy Summers, Director of Human Resources for Lifepoint. He observed she was quite upset about the "unofficial" MRI, but she eventually gave him a panel from which he chose Dr. John Friedland as his treating physician. An appointment was scheduled for him for January 24.

At the hearing, Lifepoint's counsel subjected Mr. Adams to extensive cross-examination regarding a recorded statement he gave to Michelle Radford, adjuster for Lifepoint's insurance carrier, on January 21. (Ex. 7.) In the recorded statement, Ms. Radford asked Mr. Adams if he had "previous back pain or prior back injuries." He responded by stating, "No, I haven't had prior back injuries. Think like everybody else, I've had occasional back pain, when you spend all day working in the garden or something. But I've never injured my back before." (Ex. 7 at 11.) When asked by Lifepoint's counsel about this statement in relation to his admission that he has suffered from chronic back pain for fifteen years for which he daily takes MS Contin, Mr. Adams testified he thought Ms. Radford was asking about spinal injuries as opposed to low back strains.

Ms. Radford then asked if he ever received treatment for his low back before or saw a physician for any kind of back pain. Mr. Adams responded "no" to both questions. (Ex. 7 at 12.) When asked at the hearing to explain his answers to Ms. Radford in light of his history, Mr. Adams said he did not think of medication as treatment, which he considers to be manipulations, physical therapy, etc. He further stated he does not see a physician at Hanson, but a nurse practitioner, and Ms. Radford specifically asked him about seeing a physician.

Ms. Radford asked Mr. Adams if he had ever undergone an MRI of his low back. Mr. Adams again answered "no." *Id.* At the hearing, Lifepoint's counsel introduced an MRI report of Mr. Adams' low back from 2009. (Ex. 6.) Mr. Adams claimed he forgot about that MRI at the time of the statement. Ms. Radford also asked Mr. Adams if he ever suffered from pain radiating to his left leg before. Mr. Adams said "no." (Ex. 7 at 12.) The MRI scan from 2009 refers to low back and hip pain. (Ex. 6.) Mr. Adams

3

explained this during the hearing by stating the pain was in the muscle above the hip and did not radiate like the pain from the alleged January 9, 2016 incident.

Finally, after discussing his current pain level, Ms. Radford asked Mr. Adams if he was taking any medicine. Mr. Adams told her he was taking "muscle relaxer and ibuprofen." (Ex. 7 at 16.) At the hearing, Lifepoint's counsel reminded Mr. Adams that he had been taking narcotics for back pain for fifteen years and received prescriptions for MS-Contin and Percocet from Hanson only a few days before his recorded statement. He asked him why he did not tell Ms. Radford about these medications. Mr. Adams responded that even though he had the prescriptions, he was not taking narcotics at the time he gave the statement because he was waiting for his appointment with Dr. Friedland on the 24th.

Mr. Adams concluded his proof by submitting a record from Dr. Friedland dated May 9, 2016, diagnosing him with a herniated disc and recommending surgery. The note also took Mr. Adams off work pending surgery. (Ex. 12.) Lifepoint never paid any temporary disability benefits to Mr. Adams, and after receipt of his medical records from Hansen, denied the compensability of the claim entirely.

At the hearing, Mr. Adams contended he suffered from a low back injury on January 9, 2016, while pushing a patient on a gurney during the course and scope of his employment with Lifepoint as an MRI technologist. Lifepoint countered by arguing Mr. Adams account is not credible given his history and the testimony of Mr. Howard. As a result, Mr. Adams' claim should be denied.

## Findings of Fact and Conclusions of Law

The Court considers the following legal principles in reaching its conclusions in this matter. The Court must interpret the Workers' Compensation Law fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2015). Mr. Adams has the burden of proof on all essential elements of his workers' compensation claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015).

Mr. Adams need not prove every element of his claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, Mr. Adams has the burden to come forward with sufficient evidence from which the trial court can determine she is likely to prevail at a hearing on the merits. *Id.* This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an

4

expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

A finding that Mr. Adams is likely to prevail at a hearing on the merits regarding the compensability of his claim first requires the Court to find it likely that the January 9, 2016 incident involving the gurney actually occurred as he described. Given that this alleged incident was unwitnessed, and went undocumented until January 15, when he reported it to Human Resources after reviewing an "unofficial" MRI of his back, such a finding hinges on the Court determining Mr. Adams is a credible witness. The Court is unable to do so.

Inconsistencies in testimony are to be expected. No one has perfect recall or complete understanding when giving testimony or providing a statement to another. However, given the breadth and scope of Mr. Adams' clear misrepresentations to Ms. Radford concerning his history of low back pain, the Court can only draw the conclusion that he was intentionally trying to mislead her. Of greater consequence, Mr. Adams failed to admit to these misrepresentations when testifying under oath, instead choosing to try justifying his responses with excuses and explanations the Court finds unpersuasive.

Thus, given that the Court finds Mr. Adams is not a credible witness, the Court also finds Mr. Adams is unlikely to prevail at a hearing on the merits in establishing that he sustained a work-related injury to his low back on January 9, 2016. This is particularly true given that the records from Hanson and Mr. Howard's affidavit contravene his testimony. As a result, the Court holds that Mr. Adams' claim for disability benefits is denied at this time.


**IT IS, THEREFORE, ORDERED** as follows:

1.    Mr. Adams' request for workers' compensation benefits is denied, at this time.

2.    This matter is set for Initial Hearing/Status Conference on January 18, 2017, at 10:30 a.m. C.T.

**ENTERED THIS THE 16**[TH] **DAY OF NOVEMBER, 2016.**

**Robert V. Durham, Judge**
**Court of Workers' Compensation Claims**

5

**Initial Hearing/Status Conference:**

An Initial Hearing/Status Conference has been set with Judge Robert Durham, Court of Workers' Compensation Claims. You must call 615-253-0010 or toll-free at 866-689-9049 to participate in the Initial Hearing.

Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing

Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:

1. Affidavit of David A. Adams
2. Wage Statement
3. Job Description from Mr. Adams
4. Medical records of Dr. John Friedland
5. Medical records of Hanson Family Medical
6. MRI report dated April 23, 2009
7. Recorded statement from Mr. Adams
8. Affidavit of John Howard
9. Deposition of David Adams
10. MRI report dated January 16, 2016
11. Certificate to Return to Work dated January 27, 2016
12. Report from Dr. Friedland dated May 9, 2016
13. Record from Hanson Family Medical dated January 13, 2016

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Motion to Amend Dispute Certification Notice
4. Order Setting Expedited Hearing and Granting Motion to Amend DCN
5. Lifepoint's Pre-Hearing Statement

---

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Denying Benefits was sent to the following recipients by the following methods of service on this the 16th day of November, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| David Adams | X | | X | 253 Hunt Hollow Drive<br>Estill Springs, TN 37330<br>Papabass53@yahoo.com |
| Cliff Wilson | | | X | cwilson@howardtatelaw.com |

Penny Shrum, Clerk of Court
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**